# No. 24-40783

In the
# United States Court of Appeals
## for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DEBRA LYNN MERCER-ERWIN

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Texas
Sherman Division, No. 4:20-CR-212-1

## BRIEF OF APPELLANT DEBRA MERCER-ERWIN

Jack B. Zimmermann                Terri R. Zimmermann
Texas Bar No. 22266500            Texas Bar No. 00797883
Jack@TexasDefenseLawyers.com      Terri@TexasDefenseLawyers.com
Zimmermann & Zimmermann, PLLC
P.O. Box 3699
Conroe, Texas 77305
(713) 552-0300

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| United States of America (trial) | Ernest Gonzalez, USAO Plano, Texas<br>Heather Rattan, USAO Plano, Texas<br>Lesley Brooks, USAO Sherman, Texas |
| United States of America (appeal) | Bradley Visosky, USAO Plano, Texas<br>Marisa Miller, USAO Plano, Texas |

| Appellant: | Counsel for Appellant: |
|---|---|
| Debra Mercer-Erwin (trial) | Joe White, White & Weddle, PC, Oklahoma City, Oklahoma<br>Kate White, White & Weddle, PC, Oklahoma City, Oklahoma<br>Matthew Cyran, White & Weddle, PC, Oklahoma City, Oklahoma<br>Brett Behenna, Krahl Goerke Meyer & Behenna, Oklahoma City, Oklahoma |
| Debra Lynn Mercer-Erwin (appeal) | Jack Zimmermann, Zimmermann & Zimmermann, PLLC, Conroe, Texas<br>Terri Zimmermann, Zimmermann & Zimmermann, PLLC, Conroe, Texas |

s/Terri R. Zimmermann
Attorney of record for Debra Lynn Mercer-Erwin

ii

# STATEMENT REGARDING ORAL ARGUMENT

Counsel respectfully request oral argument because the issues in this case are significant, interrelated, and based on a massive record. While counsel endeavored to adequately present the facts and legal arguments in this Brief, oral argument would significantly aid the decisional process by allowing the Judges on this Court to ensure they have the information they need to arrive at a just resolution of this case. FED. R. APP. P. and 5TH CIR. R. 34.

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS............................................................................................iv

TABLE OF AUTHORITIES ......................................................................................x

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES...............................................................................2

I

COUNT ONE OF THE INDICTMENT IS DEFICIENT BECAUSE
THE OFFENSE ALLEGED IN THE TITLE (CONSPIRACY TO
MANUFACTURE AND DISTRIBUTE COCAINE) DIFFERS
FROM THE OFFENSE ALLEGED IN THE BODY
(CONSPIRACY TO POSSESS COCAINE).

II.

THE JURY INSTRUCTIONS ON COUNT ONE ARE
ERRONEOUS BECAUSE THEY ARE AMBIGUOUS AND
CONFUSING DUE TO THE DIFFERENT OFFENSES ALLEGED,
AND ALLOW CONVICTION ON AN OFFENSE NOT CHARGED.

III.

THE DISTRICT COURT REVERSIBLY ERRED BY NOT
INSTRUCTING THE JURY ON THE ELEMENTS OF THE
UNDERLYING OFFENSE OF THE CONSPIRACY
CHARGED IN COUNT ONE.

IV.

THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG
CONSPIRACY CHARGED IN COUNT ONE.

V.

THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG
CONSPIRACY CHARGED IN COUNT TWO.

VI.
THE TRIAL COURT REVERSIBLY ERRED BY
INSTRUCTING THE JURY ON DELIBERATE IGNORANCE.

VII.

THE EVIDENCE WAS INSUFFICIENT TO PROVE THE
WIRE FRAUD CONSPIRACY CHARGED IN COUNT SEVEN.

VIII.

THE EVIDENCE WAS INSUFFICIENT TO PROVE THE
MONEY LAUNDERING CONSPIRACY CHARGED IN COUNT FOUR.

IX.

THE DISTRICT COURT REVERSIBLY ERRED BY
ORDERING RESTITUTION.

STATEMENT OF THE CASE ................................................................. 3

A.    Proceedings Below. ...................................................................... 3

B.    General Statement of the Facts .................................................... 4

      1. Ms. Mercer-Erwin's Background ............................................. 4

      2. Events Relevant to the Allegations .......................................... 5

C.    Overview of the Allegations ........................................................ 6

SUMMARY OF THE ARGUMENT ...................................................................7

ARGUMENT ................................................................................................10

I.

COUNT ONE OF THE INDICTMENT IS DEFICIENT BECAUSE
THE OFFENSE ALLEGED IN THE TITLE (CONSPIRACY TO
MANUFACTURE AND DISTRIBUTE COCAINE) DIFFERS
FROM THE OFFENSE ALLEGED IN THE BODY
(CONSPIRACY TO POSSESS COCAINE).

Facts ..........................................................................................................10

Argument....................................................................................................11

A.    Standard of Review............................................................................11

B.    An Indictment Must Give Notice of the Charged Offense............................11

C.    Count One is Deficient .................................................................12

D.    Conclusion ........................................................................14

II.

THE JURY INSTRUCTIONS ON COUNT ONE ARE
ERRONEOUS BECAUSE THEY ARE AMBIGUOUS AND
CONFUSING DUE TO THE DIFFERENT OFFENSES ALLEGED,
AND ALLOW CONVICTION ON AN OFFENSE NOT CHARGED.

Facts ..........................................................................................................14

Argument....................................................................................................14

A.    Standard of Review............................................................................15

B.    Jury Instructions Must Accurately Guide the Jury ........................................15

C.     Reversible Error Occurred ...............................................................16

D.     Conclusion ......................................................................................17

## III.

### THE DISTRICT COURT REVERSIBLY ERRED BY NOT INSTRUCTING THE JURY ON THE ELEMENTS OF THE UNDERLYING OFFENSE OF THE DRUG CONSPIRACY CHARGED IN COUNT ONE.

Facts ........................................................................................................17

Argument...................................................................................................18

A.     Standard of Review........................................................................18

B.     Jury Instructions on Conspiracy Must Include the Elements of the Underlying Offense ...................................................................18

C.     Reversible Error Occurred ...........................................................20

D.     Conclusion ......................................................................................22

## IV.

### THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG CONSPIRACY CHARGED IN COUNT ONE.

## V.

### THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG CONSPIRACY CHARGED IN COUNT TWO.

## VI.

### THE TRIAL COURT REVERSIBLY ERRED BY INSTRUCTING THE JURY ON DELIBERATE IGNORANCE.

Facts ........................................................................................................22

Argument..................................................................................................27

A.    Standard of Review.......................................................................27

B.    Conspiracy Requires an *Agreement* to Commit the Underlying Offense .....28

C.    The Evidence Was Insufficient to Prove *Any* Agreement to
      Violate the Law..............................................................................29

D.    The District Court Erred by Instructing on Deliberate Ignorance.................31

E.    Conclusion ....................................................................................34

## VII.

### THE EVIDENCE WAS INSUFFICIENT TO PROVE THE WIRE FRAUD CONSPIRACY CHARGED IN COUNT SEVEN.

## VIII.

### THE EVIDENCE WAS INSUFFICIENT TO PROVE THE MONEY LAUNDERING CONSPIRACY CHARGED IN COUNT FOUR.

Facts .....................................................................................................34

Argument..................................................................................................36

A.    Standard of Review.......................................................................36

B.    Venue is an Element of the Offense ..............................................37

C.    The Evidence Was Insufficient to Prove Conspiracy to Commit
      Wire Fraud: There was No Evidence Any Agreement or
      Overt Act in Furtherance of a Conspiracy Occurred in the
      Eastern District of Texas ...............................................................38

D.    Conviction on Count Four Was Based on the Drug Conspiracies
      Charged in Counts One and Two, or the Wire Fraud Conspiracy
      Charged in Count Seven; Since the Evidence was Insufficient

on the Underlying Counts, Count Four Must Also Fail ................................39

E.    Conclusion ................................................................................39

## IX.

## THE DISTRICT COURT REVERSIBLY ERRED
## BY ORDERING RESTITUTION.

Facts ..............................................................................................40

Argument.......................................................................................42

A.    Standard of Review.......................................................................42

B.    Restitution is Intended to Compensate "Victims" of Crime .........................42

C.    The District Court Erred by Ordering Restitution to Co-Conspirators .........43

    1.  One Cannot be a Co-Conspirator and a Victim at the Same Time.  ........43

    2.  No "Victim" Came Forward...................................................44

D.    Conclusion ................................................................................44

CONCLUSION ...............................................................................45

CERTIFICATE OF SERVICE ..............................................................46

CERTIFICATE OF COMPLIANCE ........................................................47

# TABLE OF AUTHORITIES

<u>Page</u>

United States Supreme Court

*Brown v. United States*, 558 U.S. 897 (2009)...........................................................20

*Direct Sales Co. v. United States*, 319 U.S. 703 (1943) ..........................................29

Federal Courts of Appeals

*In re Wellcare Health Plans, Inc.*, 754 F.3d 1234 (11th Cir. 2014) .......................43

*Roberts v. United States,* 416 F.2d 1216 (5th Cir. 1969)........................................29

*Trabucco v. Rivera*, 141 F.4th 720 (5th Cir. 2025) ...........................................16, 21

*United States v. Aguiar*, 610 F.2d 1296 (5th Cir. 1980)........................................29

*United States v. Alghazouli*, 517 F.3d 1179 (9th Cir. 2008)...................................20

*United States v. Allen*, 587 F.3d 246 (5th Cir. 2009).......................................20, 21

*United States v. Archer,* 671 F.3d 149 (2d Cir. 2011) .............................................43

*United States v. Ashley*, 128 F.4th 641 (5th Cir. 2025) ..........................................37

*United States v. Bourrage*, 138 F.4th 327 (5th Cir. 2025).............................. *passim*

*United States v. Brown*, 553 F.3d 768 (5th Cir. 2008) ...........................................20

*United States v. Cockerell,* 140 F.4th 213 (5th Cir. 2025) ......................................42

*United States v. Demmitt,* 706 F.3d 665 (5th Cir. 2013) .........................................32

*United States v. Earnest*, 132 F.4th 905 (5th Cir. 2025) .........................................16

*United States v. Evans*, 892 F.3d 692 (5th Cir. 2018) .............................................11

*United States v. Ganji,* 880 F.3d 760 (5th Cir. 2018)........................................28, 29

*United States v. Juarez,* 866 F.3d 622 (5th Cir. 2017) ..........................................32

*United States v. Lamartiniere,* 100 F.4th 625
    (5th Cir. 2024), *cert. denied sub nom Lamartiniere v.*
    *United States,* 145 S. Ct. 1069 (2025) ..............................................28, 31, 33

*United States v. Lazarenko,* 624 F.3d 1247 (9th Cir. 2010) ...................................43

*United States v. Lee*, 966 F.3d 310, 319 (5th Cir. 2020) ........................................37

*United States v. Martinez,* 131 F.4th 294 (5th Cir. 2025) ...........................27, 28, 36

*United States v. Mendoza-Medina,* 346 F.3d 121 (5th Cir. 2003)..........................32

*United States v. Nguyen,* 493 F.3d 613 (5th Cir. 2007)...........................................32

*United States v. Ojeikere,* 545 F.3d 220 (2d Cir. 2008) .........................................43

*United States v. Rainford,* 110 F.4th 455 (2d Cir. 2024)........................................43

*United States v. Reff,* 479 F.3d 396 (5th Cir. 2007)................................................21

*United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006) ......................................43

*United States v. Smithers*, 27 F.3d 142 (5th Cir. 1994)....................................16, 20

*United States v. Stone*, 960 F.2d 426 (5th Cir.1992) ..............................................21

*United States v. Williams*, 985 F.2d 749 (5th Cir. 1993)........................................20

## Constitutions, Statutes, Rules, and Other Authorities

U.S. CONST. art. III, § 2 ........................................................................................37

U.S. CONST. amend. VI............................................................................................37

18 U.S.C. §3231 ........................................................................................................1

18 U.S.C. § 3237(a) .................................................................37

18 U.S.C. § 3663A ..................................................................42

18 U.S.C. § 3742(a) ...................................................................1

21 U.S.C. § 84l(a)(l)...........................................................10, 12

21 U.S.C. § 846.................................................................10, 18

28 U.S.C. § 1291 ......................................................................1

FED. R. APP. P. 4(b)..................................................................1

FED. R. APP. P. 32 ...................................................................47

FED. R. EVID. 801(d)(2)(E) .....................................................41

Fifth Circuit Pattern Jury Instructions (Criminal Cases) Introduction (2024) ..16, 19

Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.95A (2019) ..............19

Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.97 (2019) .................18

Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.97 Note (2019) .........19

# JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Texas had jurisdiction over this criminal prosecution pursuant to 18 U.S.C. §3231. This Court has jurisdiction of this appeal from the District Court's final judgment of conviction and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). A notice of appeal as to the original Judgment was timely filed on December 3, 2024 in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure, and a subsequent notice of appeal was filed on May 25, 2025 as to the Amended Judgment. The original brief was due on April 21, 2025 but this Court granted an unopposed motion for extension of time until July 21, 2025 and another until July 28, 2025. This Brief is timely filed.

# STATEMENT OF THE ISSUES

I.    COUNT ONE OF THE INDICTMENT IS DEFICIENT BECAUSE THE OFFENSE ALLEGED IN THE TITLE (CONSPIRACY TO MANUFACTURE AND DISTRIBUTE COCAINE) DIFFERS FROM THE OFFENSE ALLEGED IN THE BODY (CONSPIRACY TO POSSESS COCAINE).

II.   THE JURY INSTRUCTIONS ON COUNT ONE ARE ERRONEOUS BECAUSE THEY ARE AMBIGUOUS AND CONFUSING DUE TO THE DIFFERING OFFENSES ALLEGED, AND ALLOW CONVICTION ON AN OFFENSE NOT CHARGED.

III.  THE DISTRICT COURT REVERSIBLY ERRED BY NOT INSTRUCTING THE JURY ON THE ELEMENTS OF THE UNDERLYING OFFENSE OF THE DRUG CONSPIRACY CHARGED IN COUNT ONE.

IV.   THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG CONSPIRACY CHARGED IN COUNT ONE.

V.    THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG CONSPIRACY CHARGED IN COUNT TWO.

VI.   THE DISTRICT COURT REVERSIBLY ERRED BY INSTRUCTING THE JURY ON DELIBERATE IGNORANCE.

VII.  THE EVIDENCE WAS INSUFFICIENT TO PROVE THE WIRE FRAUD CONSPIRACY CHARGED IN COUNT SEVEN.

VIII. THE EVIDENCE WAS INSUFFICIENT TO PROVE THE MONEY LAUNDERING CONSPIRACY CHARGED IN COUNT FOUR.

IX.   THE DISTRICT COURT REVERSIBLY ERRED BY ORDERING RESTITUTION.

# STATEMENT OF THE CASE

## A.    Proceedings Below.

On August 12, 2020, the Government filed an indictment against Ms. Mercer-Erwin and several co-defendants (ROA.42-51); after several superceding indictments, the Fifth Superseding indictment was filed on May 5, 2021, with the captions of the Counts alleging:

Count 1:    Conspiracy to manufacture and distribute cocaine, in violation of 21 U.S.C. § 846;[1]

Count 2:    Conspiracy to manufacture and distribute cocaine intending, knowing, and with reasonable cause to believe that the cocaine will be unlawfully imported into the United States, in violation of 21 U.S.C. § 963;

Count 3:    Manufacturing and distributing five kilograms or more of cocaine intending, knowing, and with reasonable cause to believe that the cocaine will be unlawfully imported into the United States, in violation of 21 U.S.C. § 959;

Count 4:    Conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h);

Count 5:    Conspiracy to commit export violations, in violation of 18 U.S.C. § 371;

Count 6:    Conspiracy to commit registration violations involving aircraft not providing air transportation, in violation of 18 U.S.C. § 371; and

Count 7:    Conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.

---

[1]    Note the body of this count alleges conspiracy to possess with intent to distribute five kilograms or more of cocaine.

ROA.574-620.

Trial took place from April 10 to May 3, 2023; the jury found Ms. Mercer-Erwin guilty on Counts 1, 2, 4, and 7, and acquitted on the other counts. ROA.1706-1713. Sentencing took place on November 13 and 20, 2024. The District Court sentenced Ms. Mercer-Erwin to serve 192 months of confinement, pay a $400 special assessment, and to pay $144 million in restitution. ROA.1826-32, ROA.43287-93.

Ms. Mercer-Erwin timely filed a notice of appeal. ROA.1833-34; ROA.43298-99.

## B. General Statement of the Facts.

### 1. Ms. Mercer-Erwin's Background

Ms. Mercer-Erwin was born and raised in Oklahoma. ROA.5663. At the time of trial, she had been married for 21 years with two children and four grandchildren. ROA.5663-64. After some college, she worked in real estate escrow and then took a job in various other places before working as an escrow agent for Federal Aviation Title, an aircraft title company. ROA.5663-64. She worked there from 1999-2001. ROA.5665. At the time, she was divorced with two children. ROA.5666. In 2001, she started Wright Brother Aircraft Title (WBAT), incorporated in Oklahoma. ROA.5666-67. WBAT served as an escrow agent for the purchase and sale of

aircraft, and also performed title searches on the aircraft. ROA.5669. She became active in the aviation industry, attending and speaking at conferences. ROA.5670.

She met a business colleague, Federico Machado, in 2005 or 2006 at an aviation event. ROA.5681. In 2012, Ms. Mercer-Erwin's son passed away at age 22 from a drug-related incident. ROA.5681-82. Mr. Machado came to the funeral even though he had not been invited and had never met her son. ROA.5682-83.

Sometime during or before 2011 Ms. Mercer-Erwin met Connie Wood, who owned Aircraft Guaranty Corporation (AGC), which was located in Onalaska, Texas. ROA.5735-36. She bought AGC from Mr. Wood in 2014. ROA.4857. Mr. Wood stayed on as a consultant for approximately two years. ROA.5736.

### 2.    Events Relevant to the Allegations

Airplanes have tail numbers, which identify them similar to the way a license plate is associated with a car; but the Federal Aviation Administration (FAA) will only register a tail number to a U.S. citizen. ROA.2420, 5519. The FAA is an "owner registry," meaning aircraft are registered in the name of its owner, unlike in some other countries, which are "operator registries" registered in the name of the entity that is operating the aircraft. ROA.5519. Non-citizens can get a U.S. tail number (an "N" number) by using a U.S. trustee. ROA.2419-20, 5520. AGC served as a trustee, filing the appropriate paperwork with the FAA to register planes. AGC was the legal "owner" of the plane for registration purposes, but the non-citizen beneficial owner

of the trust had operational control of the aircraft, responsible for flight plans, maintenance, hiring crew, etc. ROA.5022-23. This process is legal under U.S. law. ROA.5520, 5597-98, 5743. The FAA approves every non-citizen trust arrangement. ROA.4498-99, 4541.

## C.     Overview of the Allegations.

The Government alleged two different sets of conspiracies:

- one involving cocaine, whereby drug traffickers used aircraft in trust with AGC in their narcotics operations; and

- one involving the alleged Ponzi scheme, whereby Mr. Machado and Ms. Mercer-Erwin allegedly used the WBAT trust account to solicit "investments" for "refundable deposits" on fake aircraft, and then paid earlier investors with money received from later investors.

While Ms. Mercer-Erwin is accused of being involved in both sets of conspiracies, both are alleged to have taken place in the same general time frame, and both involve aircraft, there is no factual overlap between them. They involved different businesses—AGC is the company accused of being involved in the drug allegations, and WBAT is the one accused of participating in the Ponzi scheme. The aircraft at issue in the alleged drug conspiracies are not the same aircraft involved in the alleged Ponzi scheme (in fact, there were no actual aircraft involved in that scheme). The only common denominator is Ms. Mercer-Erwin.

# SUMMARY OF THE ARGUMENT

**I.     COUNT ONE OF THE INDICTMENT IS DEFICIENT BECAUSE THE OFFENSE ALLEGED IN THE TITLE (CONSPIRACY TO MANUFACTURE AND DISTRIBUTE COCAINE) DIFFERS FROM THE OFFENSE ALLEGED IN THE BODY (CONSPIRACY TO POSSESS COCAINE).**

The title of Count One alleges a different offense than the offense alleged in the body of the count. This fails to put the Defense on notice of what crime to defend and caused the District Court to improperly instruct the jury on the elements on this count.

**II.     THE JURY INSTRUCTIONS ON COUNT ONE ARE ERRONEOUS BECAUSE THEY ARE AMBIGUOUS AND CONFUSING DUE TO THE DIFFERENT OFFENSES ALLEGED, AND ALLOW CONVICTION ON AN OFFENSE NOT CHARGED.**

The District Court abused his discretion by instructing the jury that Ms. Mercer-Erwin was charged with conspiring to manufacture and distribute cocaine, but that to convict, they must find she possessed cocaine with intent to distribute it. This is ambiguous and confusing, and allowed the jury to convict on an offense not charged.

**III.     THE DISTRICT COURT REVERSIBLY ERRED BY NOT INSTRUCTING THE JURY ON THE ELEMENTS OF THE UNDERLYING OFFENSE OF THE DRUG CONSPIRACY CHARGED IN COUNT ONE.**

The District Court abused his discretion by instructing the jury as to the two elements of conspiracy, but not instructing on the elements of the underlying offense.

7

**IV.    THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG CONSPIRACY CHARGED IN COUNT ONE.**

There was insufficient evidence to prove Ms. Mercer-Erwin agreed to commit any underlying offense.

**V.    THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG CONSPIRACY CHARGED IN COUNT TWO.**

There was insufficient evidence to prove Ms. Mercer-Erwin agreed to commit the charged underlying offense of manufacturing and distributing cocaine intending, knowing, and with reasonable cause to believe that the cocaine would be unlawfully imported into the United States.

**VI.    THE DISTRICT COURT REVERSIBLY ERRED BY INSTRUCTING THE JURY ON DELIBERATE IGNORANCE.**

The District Court abused his discretion in instructing the jury on deliberate ignorance, which was unsupported by the evidence and prejudicial.

**VII.    THE EVIDENCE WAS INSUFFICIENT TO PROVE THE WIRE FRAUD CONSPIRACY CHARGED IN COUNT SEVEN.**

The Government presented no evidence that any agreement or overt act took place in the Eastern District of Texas (EDTX), and thus did not meet its burden to prove venue by a preponderance of the evidence.

**VIII.    THE EVIDENCE WAS INSUFFICIENT TO PROVE THE MONEY LAUNDERING CONSPIRACY CHARGED IN COUNT FOUR.**

The evidence was insufficient to prove any underlying offense upon which the money laundering count was based, therefore this count fails.

## IX. THE DISTRICT COURT REVERSIBLY ERRED BY ORDERING RESTITUTION.

The District Court abused his discretion by ordering restitution to "victims"

who were co-conspirators and who did not submit any request for restitution.

# ARGUMENT

**I.    COUNT ONE OF THE INDICTMENT IS DEFICIENT BECAUSE THE OFFENSE ALLEGED IN THE TITLE (CONSPIRACY TO MANUFACTURE AND DISTRIBUTE COCAINE) DIFFERS FROM THE OFFENSE ALLEGED IN THE BODY (CONSPIRACY TO POSSESS COCAINE).**

### *Facts*

The entirety of Count One reads verbatim as follows:

### <u>COUNT ONE</u>

> Violation: 21 U.S.C. § 846 (Conspiracy to Manufacture and Distribute Cocaine)

That sometime in or about 2010, and continuously thereafter up to and including the date of this Fifth Superseding Indictment, in the Eastern District of Texas, and elsewhere, **Debra Lynn Mercer-Erwin, Kayleigh Moffett, Guillermo Garcia Mendez, Federico Andres Machado, Carlos Rocha Villaurrutia, Alban Gerardo Azofeifa-Chacon, Aaron Bello-Millan, and Michael Assad Marcos**, defendants, did  knowingly and intentionally combine, conspire, and agree with other persons known and unknown to the United States Grand Jury, to knowingly and intentionally possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a schedule II controlled substance, a violation of 21 U.S.C. § 84l(a)(l).

In violation of 21 U.S.C. § 846.

ROA.604.

The Defense did not object to the form of this count. The Defense did file a Motion for a Bill of Particulars, which the magistrate judge denied. ROA.825-39, ROA.851-52.

## *Argument*

### A.    Standard of Review.

This Court reviews an unpreserved challenge to the sufficiency of the indictment for plain error. *United States v. Evans*, 892 F.3d 692, 711 (5th Cir. 2018) (citations omitted). Plain error occurs when a forfeited error is clear or obvious, and affects an appellant's substantial rights. *United States v. Bourrage*, 138 F.4th 327, 341 (5th Cir. 2025) (citations omitted). "If such a showing is made, [this Court has] the discretion to correct the error, but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 342 (citation omitted).

### B.    An Indictment Must Give Notice of the Charged Offense.

"The point of an indictment is to inform a defendant of the charge against" her. *Id.* at 712. It must also meet "minimum constitutional standards," specifically: "the indictment must (1) have the essential elements of the offense charged for each count, (2) describe the elements of the offense with particularity, and (3) be specific enough to protect the defendant from subsequent prosecution for the same offense." *Id.*

**C.     Count One is Deficient.**

While manufacturing and distributing cocaine and possession with the intent to distribute cocaine are both violations of 21 U.S.C. § 841(a)(l), they are different offenses that require the Government to prove distinct facts in order to secure a conviction. The indictment should inform a defendant of which offense is at issue, but this count does not.

The Motion for a Bill of Particulars states, "the Indictment is substantially devoid of specific, factual allegations that would give [Ms. Mercer-Erwin] sufficient notice of the accusations against" her. ROA.811. An examination of the Motion and the Government's Response indicates the parties did not know or agree on what the essence of the charge against Ms. Mercer-Erwin was—manufacturing and distribution or possession with the intent to distribute. Page 1 of the motion states the indictment charged "conspiracy to *manufacture and distribute* cocaine (Count 1)." ROA.810 (emphasis added). Page 6 repeats that language, but then states, "Count 1 alleges a conspiracy among all eight Defendants to *possess with the intent to distribute* cocaine." ROA.815 (emphasis added). The Government response stated, "[W]ith respect to Count 1, the object of the conspiracy was the *manufacture and distribution* of cocaine." ROA.848 (emphasis added).

To further confuse the issue, the Government repeated the "manufacture and distribution" allegation in other pleadings. For example, in opposition to a motion to

dismiss for lack of venue, the Government asserted, "The principal thrust of the United States' case against the Defendants, Debra Lynn Mercer-Erwin and Kayleigh Moffett, is that they participated in the *manufacture, distribution*, and importation of cocaine into the United States when they knowingly assisted in the U.S. registration of drug trafficking aircraft and helped to conceal the true ownership of these aircraft." ROA.929 (emphasis added). More significantly, in opening statement, the Government told the jury, "in Counts 1 through 3, that's where the defendant is charged with distributing and importing cocaine into the United States." ROA.2347.

Finally, and most importantly, during Ms. Mercer-Erwin's direct testimony, her counsel asked her how she pleaded to each count of the indictment, and specifically:

> Q. As to Count 1, did you conspire to *manufacture and distribute* cocaine?
>
> A. No.

ROA.5659 (emphasis added). There was no question about possession with intent to distribute.

These statements of counsel for both parties illustrates the confusion, and demonstrates the count does not comport with the constitutional requirements of an indictment. Not only was Ms. Mercer-Erwin not on notice whether she had to defend against an allegation of conspiracy to manufacture and distribute, or an allegation of

conspiracy to possess with intent to distribute, two different underlying offenses, this error carried over to the jury instructions. *See* Issue II, *infra*. Plain error occurred; the error was clear or obvious, and affected Ms. Mercer-Erwin's substantial rights. *Bourrage*, 138 F.4th at 341 (citations omitted). This Court should exercise its discretion to correct the error because such an error in a charging instrument "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 342 (citation omitted).

**D.    Conclusion.**

Count One of the indictment is deficient. This Court should set aside the verdict on this count and the sentence.

**II.    THE JURY INSTRUCTIONS ON COUNT ONE ARE ERRONEOUS BECAUSE THEY ARE AMBIGUOUS AND CONFUSING DUE TO THE DIFFERENT OFFENSES ALLEGED, AND ALLOW CONVICTION ON AN OFFENSE NOT CHARGED.**

*Facts*

As set forth in Issue I, *supra*, Count One of the indictment alleged two different offenses: the title charged conspiracy to manufacture and distribute cocaine, while the body charged conspiracy to possess with the intent to distribute cocaine. The District Court repeated this error in his instructions to the jury given orally and in writing: "Defendant Debra Lynn Mercer-Erwin is charged in Count One of the Fifth Superseding Indictment with the offense of Conspiracy to

14

*Manufacture and Distribute* Cocaine, in violation of Title 21, United States Code,

Section 846. . . . For you to find a (sic) defendant guilty of this crime, you must be

convinced that the government has proved each of the following elements beyond a

reasonable doubt:

First: That the defendant and at least one other person made an agreement,

either directly or indirectly, to *possess with the intent to distribute* a mixture or

substance containing a detectable amount of cocaine . . ." ROA.1669-70 (written

instructions); ROA.6172-73 (oral instructions substantially verbatim) (emphasis

added).

The Defense did not object to these instructions.[2]

### *Argument*

### A.    **Standard of Review.**

This Court reviews an unpreserved challenge to the jury instructions for plain

error. *Bourrage*, 138 F.4th at 351 (citations omitted).

### B.    **Jury Instructions Must Accurately Guide the Jury.**

The jury instructions are intended to give accurate guidance to the jury to aid

their deliberations. *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases)

---

[2]    Note the district court gave the exact same instructions to the jury prior to opening statements, without objection. ROA.2321-22. The district court repeated the "manufacture and distribute" instruction on Count One yet again when giving conspiracy instructions. ROA.6197, 6202.

Introduction (2024) ("The PJI–Criminal represents a collaborative effort by federal judges and others to provide federal trial courts in the Fifth Circuit with pattern instructions that accurately reflect the law and assist in the trial of criminal cases"). Failure to properly guide the jury can be reversible error. *United States v. Smithers*, 27 F.3d 142, 146 (5th Cir. 1994) ("The general verdict form allowed conviction for conspiracy to commit any one of several offenses. The jury did not have proper guidance as to one."). In some cases, such as when an instruction constructively amends the indictment, the error is "reversible per se." *United States v. Earnest*, 132 F.4th 905, 914 (5th Cir. 2025).

## C.    Reversible Error Occurred.

The instant case does not involve a constructive amendment; the jury instruction merely repeated the erroneous language of the indictment. *See* Issue I. However, the same principle applies—the instruction was confusing and ambiguous, and did not give the jury accurate information about the law because it told the jury Ms. Mercer-Erwin was charged with two different offenses in Count One. This created a "substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations." *Trabucco v. Rivera*, 141 F.4th 720, 730 (5th Cir. 2025) (citations omitted). The Court should find the erroneous instruction, given both orally and in writing, allowed conviction on an offense not charged, so it could have "affected the outcome of the case." *Id.* (citations omitted). Plain error occurred

because the error was clear or obvious, and affected Ms. Mercer-Erwin's substantial rights. *Bourrage*, 138 F.4th at 341 (citations omitted). This Court should exercise its discretion to correct the error because such jury charge error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 342 (citation omitted).

**D.    Conclusion.**

The instructions on Count One of the indictment were erroneous. This Court should set aside the verdict on this count and the sentence.

**III.  THE DISTRICT COURT REVERSIBLY ERRED BY NOT INSTRUCTING THE JURY ON THE ELEMENTS OF THE UNDERLYING OFFENSE OF THE DRUG CONSPIRACY CHARGED IN COUNT ONE.**

*Facts*

Count One of the indictment alleged two different offenses: the title charged conspiracy to manufacture and distribute cocaine, while the body charged conspiracy to possess with the intent to distribute cocaine. ROA.604.

The oral and written jury instructions informed the jury they must find the two elements of conspiracy in order to convict; however, the instructions completely omitted the elements of the underlying offense of the conspiracy charged in Count One. ROA.1670.

The Defense did not object to these instructions.

17

*Argument*

**A.    Standard of Review.**

This Court reviews an unpreserved challenge to the jury instructions for plain error. *Bourrage*, 138 F.4th at 351 (citations omitted).

**B.    Jury Instructions on Conspiracy Must Include the Elements of the Underlying Offense.**

The Pattern Jury Instructions clearly list the elements of a conspiracy to violate controlled substance laws charged under 21 U.S.C. § 846. Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.97 (2019). The pattern instruction states, "In this case, the defendant is charged with conspiring to _____ (*describe the object of the conspiracy as alleged in the indictment, e.g., possess with intent to distribute a controlled substance, and give elements of object crime unless they are given under a different count of the indictment*)." *Id.* (emphasis in original).

In addition to the first two elements, the pattern instruction includes two additional instructions regarding the quantity of the controlled substance: that involved in the overall scope of the conspiracy and the amount the defendant knew or reasonably should have known that the scope of the conspiracy involved. *Id.* While the district court read these instructions to the jury prior to opening

18

statements,[3] and submitted those special issues on the verdict form,[4] these elements were missing from the verbal instructions at the end of the case and the written instructions given to the jury.

The Pattern Jury Instructions also state:

Failure to instruct on the elements of the "object" crime of the conspiracy is at least "serious" error, if not plain error. Accordingly, the elements of the "object" crime of the conspiracy, as alleged in the indictment, should be included in the instructions pertaining to the conspiracy count, unless they are given under a different count of the indictment.

Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.97 Note (2019).

The Pattern Jury Instructions contain an instruction on possession with intent to distribute. Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.95A (2019). There is no discussion in the record concerning why the District Court omitted this instruction.

Jury instructions are intended to give accurate guidance to the jury to aid their deliberations. *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) Introduction (2024) ("The PJI–Criminal represents a collaborative effort by federal judges and others to provide federal trial courts in the Fifth Circuit with pattern instructions that accurately reflect the law and assist in the trial of criminal cases").[5]

---

[3]    ROA.2322.
[4]    ROA.1707-08.
[5]    The 2019 version contains similar language.

Failure to properly guide the jury can be reversible error. *Smithers*, 27 F.3d at 146 ("The general verdict form allowed conviction for conspiracy to commit any one of several offenses. The jury did not have proper guidance as to one.").

## C.  Reversible Error Occurred.

This Court has held, "Generally, failure to instruct the jury on every essential element of the offense is error." *United States v. Williams*, 985 F.2d 749, 755 (5th Cir. 1993) (citation omitted). "It is also well-established that a trial court errs in a conspiracy case if it fails to instruct the jury on an element of the crime that is the object of the conspiracy. That is, if a jury is asked to determine whether a defendant conspired to commit an offense, the jury needs to know the elements of that offense." *United States v. Alghazouli*, 517 F.3d 1179, 1189 (9th Cir. 2008).

"When a jury instruction omits or significantly misstates an essential element of an offense, the error may be severe enough to meet the plain-error standard." *United States v. Allen*, 587 F.3d 246, 255-56 (5th Cir. 2009) (quoting *United States v. Brown*, 553 F.3d 768, 785 (5th Cir. 2008), *cert. denied sub nom. Combs v. United States*, 129 S.Ct. 2812 (2009) and *Brown v. United States*, 558 U.S. 897 (2009)). Further, "plain error occurs if considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice. The relevant inquiry is whether the erroneous standard used could have meant the

difference between acquittal and conviction." *Id.* (quoting *United States v. Stone*, 960 F.2d 426, 434 (5th Cir.1992)).

As argued in Issue II, the instruction on Count One was confusing and ambiguous, and did not give the jury accurate information about the law because it told the jury Ms. Mercer-Erwin was charged with two different offenses in Count One. "The use of an unobjected-to pattern jury instruction rarely will rise to the level of plain error." *United States v. Reff*, 479 F.3d 396, 402 (5th Cir. 2007). However, the District Court did *not* follow the guidance in the pattern jury instructions; had he instructed on the elements of the underlying offense, whether it was manufacturing and distributing or possessing with intent to distribute, the jury would have been clear on what they had to find to convict. The failure to properly give these instructions created a "substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations." *Trabucco*, 141 F.4th at 730 (citations omitted). The Court should find the erroneous instruction, given both orally and in writing, omitted essential elements of the offense, and especially since there was ambiguity as to what the underlying offense was, the lack of proper instruction could have "affected the outcome of the case." *Id.* (citations omitted). Plain error occurred; the error was clear or obvious, and affected Ms. Mercer-Erwin's substantial rights. *Bourrage*, 138 F.4th at 341 (citations omitted). This Court should exercise its discretion to correct the error because such jury charge error "seriously affects the

21

fairness, integrity, or public reputation of judicial proceedings." *Id.* at 342 (citation omitted).

## D.    Conclusion.

The instructions on Count One of the indictment were erroneous. This Court should set aside the verdict on this count and the sentence.

## IV.    THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG CONSPIRACY CHARGED IN COUNT ONE.

## V.    THE EVIDENCE WAS INSUFFICIENT TO PROVE THE DRUG CONSPIRACY CHARGED IN COUNT TWO.

## VI.    THE TRIAL COURT REVERSIBLY ERRED BY INSTRUCTING THE JURY ON DELIBERATE IGNORANCE.

### *Facts*

Count One of the indictment alleged two different offenses: the title charged conspiracy to manufacture and distribute cocaine, while the body charged conspiracy to possess with the intent to distribute cocaine.[6] ROA.604. Count Two alleged conspiracy to manufacture and distribute cocaine intending, knowing, and with reasonable cause to believe that the cocaine will be unlawfully imported into the United States. ROA.604-605.

Ms. Mercer-Erwin's company, AGC, had over 1,020 planes in trust and three of them were mentioned in the indictment. ROA.4516. At trial, the Government

---

[6]    *See* Issue I.

offered evidence that planes in trust with AGC were involved in narcotics-related events. Specifically, in January 2020 one plane (N305AG) landed in Guatemala with cocaine on board, and was seized by the Guatemalan government. ROA.4424-25, 4428. Prior to that, the beneficial owner had asked Ms. Mercer-Erwin to deregister the plane, and within days after the seizure, that was accomplished, making it illegal to operate. ROA.4691-92, 4697, 4463, 5744, 5813, 13846. In February 2020, another plane (N311BD) was seized in Belize with approximately 2,310 kilograms of cocaine[7] on board. ROA.2430, 3815, 4392. Ms. Mercer-Erwin deregistered the plane with the FAA. ROA.5813, 14097, 24111.

The Government also presented evidence that drug traffickers routinely use airplanes, submarines, and trucks to move narcotics from their country of origin into the United States. ROA.3732, 3778, 3916-18, 3953-55, 4827, 5419. When the cocaine producers package the cocaine, they normally form a kilo of it into a brick and put some sort of logo to mark the product such as black scorpions, clovers, American flags, Mickey Mouse, Nike swishes, Gucci, a bear, or Apple Macintosh. ROA.3765-66, 3923, 4140, 4828-29, 4899. The U.S. Drug Enforcement Agency maintains a database of the various logos with their associated originating organizations called Fountainhead, which allows the government to track which cartels are procuring and distributing a particular brick of cocaine. ROA.3768, 3923,

---

[7]     The cocaine on this plane had an Apple logo stamp. ROA.5089.

4039-40. Specifically, for example, in this case agents were able to able to "link those bricks that were seized in Belize to bricks that were smuggled into the United States, showing the linkage from the United States to the source of supply . . . [and the] Sinaloa" cartel. ROA.4901-02.

The jury heard a great deal of testimony and saw photographs of a DEA raid on a "stash house" in the Dallas area in June 2021 where traffickers had brought cocaine, heroin, and fentanyl. ROA.3927, 3930, 3960. They also found cash, weapons, cell phones, scales, packaging, and a ledger at this house. ROA.3930. Significantly, they also found a press used to put the Apple logo on bricks of cocaine. ROA.3949-50, 3960-61, 4078, 24323 (photo). Agent West testified the logos on the cocaine can be counterfeited. ROA.4081.

Case agent Marshall testified he found no discussion of cocaine in Ms. Mercer-Erwin's cell phone download, not even using code words. ROA.2536. He found no scales, drugs, drug paraphernalia, or cash during the search of her office. ROA.2538. He admitted she was neither a buyer nor seller of drugs. ROA.2541-42. There were no direct communications showing Ms. Mercer-Erwin knew drugs would be on any plane or that she was "participating as a drug trafficker." ROA.2570. Agent Mack testified there was no evidence that she knew that plane N305AG was going to be carrying drugs, and that he was not aware of Ms. Mercer-Erwin knowing anyone who put a plane in her trust was convicted or involved with

trafficking narcotics when she registered the plane with the FAA. ROA.4690, 4692, 4699.

Evidence indicated that in 2017, a reporter contacted Ms. Mercer-Erwin about a plane that crashed in Venezuela in 2008, before Ms. Mercer-Erwin bought AGC; the pilot was a convicted drug dealer. ROA.4877-80, 5003, 5046, 5196, 5904, 5911. Also, in March 2020 she received an email from the AGC representative in Mexico, Garcia, informing her that a plane registered with AGC, N311BD, had been found with drugs on it. ROA.4910, 23896. Finally, in February 2020 she received a text message from Machado informing her that a plane registered with AGC, N305AG, was seized in Guatemala with drugs on it. ROA.4426-28. She responded that the plane was no longer registered. ROA.4698, 24117.

The District Court instructed the jury on deliberate ignorance, over strong Defense objection. ROA.6080-81. In closing argument, the Government's sum total of argument on any mens rea was that Ms. Mercer-Erwin had "warnings" that planes in her trust were being used to transport drugs. ROA.6124. The three warnings listed were the call from the reporter in 2017 and the communications from Mr. Garcia and Mr. Machado about planes that had *previously* been found with drugs. Then (likely because Ms. Mercer-Erwin also was charged in Count Three with distribution) the Government argued, "She facilitated the planes that started the cycle that caused the

drugs to be here." ROA.6127. The Government never articulated or argued any facts indicating Ms. Mercer-Erwin knew of any agreement or willfully joined in it.[8]

In total, the Government called 25 witnesses. Over 200 Government exhibits were admitted. ROA.24352-63. The Government thoroughly educated the jury how the drug trade operates from production to distribution. None of the witnesses testified about, and none of the exhibits showed, any *agreement* between Ms. Mercer-Erwin and any other person to violate the law. There was no evidence whatsoever that Ms. Mercer-Erwin knew any of the co-defendants listed in the indictment who were involved in drug distribution,[9] that she knew or associated with any known drug traffickers at all; that she agreed with any person to possess, manufacture, or distribute cocaine; that she knew such an agreement existed; or that she willingly joined such an agreement.

After the Government rested, the Defense moved for a judgment of acquittal on Counts One and Two under Rule 29, specifically arguing, "There's got to be some knowledge. You can't be tied to an individual who does a bad thing and be called a

---

[8]     The Government never mentioned any evidence to support an agreement to violate the law in opening statement, either, instead focusing on the aiding and abetting theory of liability—but the jury acquitted on the substantive offense alleged in Count Three. ROA.1711.

[9]     Ms. Mercer-Erwin obviously knows her daughter, Kayleigh Moffett, and had business dealings with Frederico Machado, who was allegedly involved in the Ponzi scheme charged as money laundering and wire fraud.

co-conspirator without some knowledge." ROA.5333-34. The Government responded that Ms. Mercer-Erwin was "willfully blinding herself, had sufficient knowledge that this was occurring, or that she was aiding and abetting" the drug distribution and importation. ROA.5340. The District Court specifically asked Government counsel to articulate the evidence supporting an agreement on the drug charges, and again, the Government relied on deliberate ignorance. ROA.5343. The Court commented, "I think it's a closer call on the drug conspiracy charges, I'll confess." ROA.5345. Then he denied the motion. ROA.5346. The Defense re-urged the arguments at the close of all the evidence, but the motion was denied again. ROA.6074-76, 78.

## *Argument*

### A.    **Standards of Review.**

This Court reviews a preserved challenge to the sufficiency of the evidence de novo. *United States v. Martinez*, 131 F.4th 294, 308 (5th Cir. 2025) (citations omitted). The Court will defer to the verdict, and affirm, "unless, viewing the evidence and reasonable inferences in light most favorable to the verdict, no rational jury could have found the essential elements of the offense to be satisfied beyond a reasonable doubt." *Id.* (citations omitted). Importantly "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." And finally, "Although the jury may make factually based

inferences, a conviction cannot rest on an unwarranted inference, the determination of which is a matter of law." *Id.* (citations omitted).

This Court reviews the preserved jury instruction issue for abuse of discretion. *United States v. Lamartiniere*, 100 F.4th 625, 636 (5th Cir. 2024), *cert. denied sub nom. Lamartiniere v. United States*, 145 S. Ct. 1069 (2025) (citation omitted).

## B.     Conspiracy Requires an *Agreement* to Commit the Underlying Offense.

The jury was instructed Ms. Mercer-Erwin was "charged in Count One . . . with the offense of Conspiracy to Manufacture and Distribute Cocaine," and that to convict, the Government had to prove she "and at least one other person *made an agreement*, either directly or indirectly, to possess with the intent to distribute a mixture or substance containing a detectable amount of cocaine."[10] ROA.6172-73 (emphasis added). This Court has emphasized, "an agreement is a necessary element of conspiracy, and as such, the Government must prove its existence beyond a reasonable doubt" as a matter of due process. *United States v. Ganji*, 880 F.3d 760, 767-68 (5th Cir. 2018) (citations omitted).

While the Government may establish the required agreement by circumstantial evidence, "proof of an agreement to enter a conspiracy is not to be lightly inferred." *Id.* (citation omitted). "Mere similarity of conduct among various

---

[10]     *See* Issues I and II.

persons and the fact that they have associated with or are related to each other is insufficient to prove an agreement." *Id.* (citation omitted).

More than 80 years ago, the Supreme Court held, "[O]ne does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally. . . . Without the knowledge, the intent cannot exist." *Direct Sales Co. v. United States*, 319 U.S. 703 (1943). This Court later found, "It is elementary that neither association with conspirators nor knowledge of illegal activity constitute proof of participation in a conspiracy." *Roberts v. United States*, 416 F.2d 1216 (5th Cir. 1969) (citation omitted). Therefore, "mere knowledge of the purpose of a conspiracy or association with conspirators, without an agreement to cooperate in the crime, is not sufficient to make one a conspirator." *United States v. Aguiar*, 610 F.2d 1296, 1303 (5th Cir. 1980) (citations omitted). Again, "The requisite fact of intentional agreement or participation cannot be made out by piling inference upon inference or by suspicion and innuendo." *Id.* at 1303-04 (citing, *inter alia, Direct Sales Co.*, 319 U.S. at 711.

## C.    The Evidence Was Insufficient to Prove *Any* Agreement to Violate the Law.

The Government did not present evidence to prove beyond a reasonable doubt that Ms. Mercer-Erwin agreed with anyone to manufacture, distribute, import, or possess with intent to distribute cocaine. Government counsel did not even argue

such evidence existed; instead, they focused only on the knowledge element (thus the deliberate ignorance instruction). The law is clear, however, that even if Ms. Mercer-Erwin knew—which she did not—drug traffickers were going to use her planes, that would be insufficient to prove an agreement, and insufficient to prove she willfully joined in such agreement. Those are all separate elements the Government was obliged to prove beyond a reasonable doubt to support a conviction. The evidence failed.

Again, the Government had the benefit of a 12TB hard drive full of Ms. Mercer-Erwin's documents and emails, as well as an extraction of her phone and other phones.[11] They conducted countless witness interviews, took a plethora of photographs, conducted wiretaps, and had volumes of other records from agencies and witnesses worldwide . . . and found *not one* mention of Ms. Mercer-Erwin being involved with cocaine or any other drug. Agent West testified that in all the voluminous evidence gathered, "her name does not show up anywhere." ROA.4070. There was no reference to her possessing or manufacturing or distributing or importing cocaine, not even in code, in any communication with any person. There simply was no evidence she knew of any agreement among the charged co-defendants or anyone else, or that she willfully joined such an agreement.

---

[11]    There were 25-30 other cell phones downloaded. ROA.4070.

Had she known of the agreement—which she did not—and still allowed planes in her trust to be used, which was the Government's theory of liability—that would be insufficient to make her a co-conspirator. Mere knowledge of illegal activity, mere presence, and even aiding and abetting, do not make one a co-conspirator. At best, Ms. Mercer-Erwin only had after the fact knowledge that a tiny percentage of planes in her trust were involved in narcotics; she specifically testified under oath she had no knowledge of drugs on the planes seized by Guatemala and Belize. ROA.5745. She received no benefit, financial or otherwise, from the cartel's worldwide drug sales. There was no evidence at all she made any agreement with anyone to violate the drug laws.

**D.     The District Court Erred by Instructing on Deliberate Ignorance.**

Again, this Court noted:

> This Court has often cautioned against the use of the deliberate ignorance instruction. We have repeatedly emphasized that a deliberate ignorance instruction should not be given as a backup or supplement in a case that hinges on a defendant's actual knowledge, and that the instruction is appropriate only in the circumstances where a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference. To support that inference, the evidence at trial must show: (1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct.

*Lamartiniere*, 100 F.4th at 650 (citations and internal quotes omitted).

The evidence was insufficient to justify the instruction in this case. First of all, as argued above, the "warnings" Ms. Mercer-Erwin received did not make her

"subjectively aware of a high probability of the existence of the illegal conduct"—
she testified she was not aware that any of the planes in her trust were involved in
drug activity prior to their seizure. ROA.5746. There were over a thousand planes in
trust with AGC, and only a tiny fraction of them were involved in narcotics activity,
and Ms. Mercer-Erwin found out about those only *after* the fact. A general awareness
that sometime drug traffickers use airplanes to transport drugs is not awareness of a
"high probability" drug traffickers were using AGC planes, especially when the
beneficial owners of those planes cleared OFAC screening and were approved by
the FAA. It is well established in this Court's jurisprudence that the instruction is
"rarely appropriate" because of "concerns that a jury will convict a defendant for
what [she] *should have known* rather than the appropriate legal standard." *United
States v. Juarez*, 866 F.3d 622, 630 (5th Cir. 2017) (quoting *United States v.
Demmitt*, 706 F.3d 665, 675 (5th Cir. 2013) and *United States v. Mendoza-Medina*,
346 F.3d 121, 132 (5th Cir. 2003)) (emphasis added). That is exactly what the
Government did here–argued Ms. Mercer-Erwin should have known bad actors were
using AGC-registered planes to traffic drugs. But that is insufficient. The relevant
inquiry is not objective–what a reasonable person should have known–it is a
subjective inquiry–what was in *Ms. Mercer-Erwin's* mind. *United States v. Nguyen*,
493 F.3d 613, 619 (5th Cir. 2007) (citation omitted). The Government offered zero

evidence indicating Ms. Mercer-Erwin had the required subjective knowledge to support a deliberate ignorance instruction.

Secondly, while "properly vetting" potential clients may not be a best practice, the Government presented no evidence Ms. Mercer-Erwin was under a legal obligation to conduct a more thorough background check than what her office performed. In fact, again, the FAA approved each and every registration Ms. Mercer-Erwin submitted. She was not presented with any information indicating a specific individual was likely to be a drug trafficker before she processed a registration which she ignored. The evidence was insufficient to show she "purposely contrived to avoid learning" of drug activity.

Ms. Mercer-Erwin was harmed. As the district court aptly noted, the Government needed the instruction to obtain a conviction on the drug conspiracy charges. ROA.5346. While this Court has found harmless error when there is "substantial evidence of actual knowledge,"[12] *no* such evidence exists in the instant case. The Government repeatedly relied on the instruction during voir dire, opening statement, questioning witnesses, and closing arguments.[13] ROA.2099-101, 2362, 3770-71, 6123. The instruction was improper.

---

[12]    *Lamartiniere*, 100 F.4th at 650 (citation omitted).

[13]    Government witnesses also testified Ms. Mercer-Erwin's conduct was "willful blindness." ROA.4497.

**E.    Conclusion.**

No rational juror could find Ms. Mercer-Erwin agreed to join the conspiracies alleged in Count One and Count Two of the indictment. The evidence was legally insufficient. The district court erred in giving the deliberate ignorance instruction. This Court should set aside the verdicts on these counts and the sentence.

## VII.   THE EVIDENCE WAS INSUFFICIENT TO PROVE THE WIRE FRAUD CONSPIRACY CHARGED IN COUNT SEVEN.

## VIII.  THE EVIDENCE WAS INSUFFICIENT TO PROVE THE MONEY LAUNDERING CONSPIRACY CHARGED IN COUNT FOUR.

### *Facts*

Count Seven of the indictment alleged conspiracy to commit wire fraud by engaging in a "Ponzi scheme." ROA.613-15. In essence, Ms. Mercer-Erwin was alleged to have agreed to defraud "investors" by "funnel[ing] money through refundable deposits placed on un-sellable aircraft during bogus sales transactions." ROA.594, 5289. The bank account used for this alleged scheme is specifically alleged in the indictment as belonging to Wright Brothers Aircraft Title, Inc. (WBAT), Ms. Mercer-Erwin's business. Evidence at trial involved only deposits into and withdrawals out of this specific bank account as part of the charged Ponzi scheme. *See, e.g.*, ROA.3470, 4778. At all times, Ms. Mercer-Erwin lived in

Oklahoma and WBAT was a corporation based and operating in Oklahoma.[14] ROA.577, 3470, 5663, 5667. The other alleged co-conspirators in this count are Ms. Mercer-Erwin's daughter and Mr. Machado; Ms. Moffett at all relevant times lived and worked in Oklahoma, and Mr. Machado has been located in several locations worldwide but none in the Eastern District of Texas (EDTX). *See* ROA.2449, 2568. None of the incoming or outgoing wire transfers were initiated or received in the EDTX.

Count Four of the indictment alleged conspiracy to commit money laundering based on five different object offenses, all with conspiracy to commit and substantive drug offenses (possession with intent to distribute, manufacture, distribution, and importation of cocaine), and conspiracy to commit and substantive wire fraud, alleged as specified unlawful activity. ROA.606-09; *see also* ROA.1672-77. The district court instructed the jury they all had to unanimously agree on which underlying offense the Government proved beyond a reasonable doubt in order to convict. ROA.1673, 6176. However, the verdict form did not contain a special issue asking the jury to specify which underlying offense or which specified unlawful activity the Government proved. ROA.1712.

---

[14]   Ms. Mercer-Erwin's other business, Aircraft Title, Inc. (AGC), was initially located in Onalaska, Texas, but in 2020, moved to Oklahoma City, Oklahoma. ROA.577, 5469-70, 5737.

After the Government rested, the Defense moved for a judgment of acquittal on Counts Four and Seven under Rule 29, specifically arguing, *inter alia*, "in terms of these two counts, 4 and 7, there is a venue issue." ROA.5336. The Government did not respond to the venue issue. The district court denied the motion. ROA.5346. The Defense re-urged the sufficiency arguments at the close of all the evidence, including the venue challenge to Counts Four and Seven, but again the Government did not respond and the motion was denied. ROA.6076, 6078.

## *Argument*

### A.     Standard of Review.

This Court reviews a preserved challenge to the sufficiency of the evidence de novo. *Martinez*, 131 F.4th at 308 (citations omitted). The Court will defer to the verdict, and affirm, "unless, viewing the evidence and reasonable inferences in light most favorable to the verdict, no rational jury could have found the essential elements of the offense to be satisfied beyond a reasonable doubt." *Id.* (citations omitted). Importantly "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." Finally, "Although the jury may make factually based inferences, a conviction cannot rest on an unwarranted inference, the determination of which is a matter of law." *Id.* (citations omitted).

This Court reviews venue issues de novo, and will affirm only if "a rational jury could conclude that the government established venue by a preponderance of the evidence." *United States v. Ashley*, 128 F.4th 641, 654 (5th Cir. 2025) (citation omitted).

## B.    Venue is an Element of the Offense.

It is fundamental that generally, "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. Proc. 18. Further, in a conspiracy case, "Venue is proper in any district where the agreement was formed or an overt act occurred." *United States v. Lee*, 966 F.3d 310, 319 (5th Cir. 2020) (citing, *inter alia*, 18 U.S.C. § 3237(a), providing that, for offenses "committed in more than one district," venue is proper "in any district in which such offense was begun, continued, or completed").

The venue requirement is constitutionally based; this Court held, "even the guiltiest of defendants cannot be convicted in a venue where their crime did not occur." *Id.* (citing U.S. CONST. art. III, § 2; id. amend. VI). Unlike other elements, the Government must prove venue by a preponderance of the evidence. *Ashley*, 128 F.4th at 654; *Lee*, 966 F.3d at 320 (citations omitted).

**C.    The Evidence Was Insufficient to Prove Conspiracy to Commit Wire Fraud: There was No Evidence Any Agreement or Overt Act in Furtherance of a Conspiracy Occurred in the Eastern District of Texas.**

The Government did not present *any* evidence to prove by any standard that Ms. Mercer-Erwin agreed with anyone to commit the charged wire fraud ("Ponzi scheme") while she or an alleged co-conspirator was in the EDTX. Similarly, there was a complete lack of evidence any overt act took place in the EDTX. Government counsel did not even argue such evidence existed, even when the Defense twice specifically argued evidence of venue was lacking when arguing the two Rule 29 motions.

At all times relevant to the alleged Ponzi scheme, Ms. Mercer-Erwin was in Oklahoma when she communicated with Mr. Machado, so there could be no agreement between them that was reached in the EDTX. Further, the wire transfers came from outside the EDTX and went to Oklahoma, which also is outside the EDTX, so no overt acts in furtherance of an agreement took place in the EDTX. Since the Government offered *no evidence at all* establishing any agreement or act occurred within the EDTX, no rational juror could have found proper venue, even by a preponderance of the evidence.

**D.    Conviction on Count Four Was Based on the Drug Conspiracies Charged in Counts One and Two, or the Wire Fraud Conspiracy Charged in Count Seven; Since the Evidence was Insufficient on the Underlying Counts, Count Four Must Also Fail.**

The district court instructed the jury they could convict Ms. Mercer-Erwin of Count Four if they unanimously found the Government had proved a drug conspiracy or wire fraud conspiracy (or their respective substantive offenses). Since there was no special issue on the verdict form for this count, there is no way to know whether the jury convicted based on Count One, Two, or Seven. Since the evidence was insufficient on Counts One,[15] Two,[16] and Seven, the evidence is also insufficient on Court Four.

**E.    Conclusion.**

No rational juror could find venue existed for Count Seven, even by a preponderance of the evidence, therefore, the evidence was legally insufficient. Since conviction of Count Four could have been based on Counts One, Two, or Seven, the evidence is insufficient as to that Count also. This Court should set aside the verdicts on these counts and the sentence.

---

[15]    See Issue IV.

[16]    *See* Issue V.

## IX.  THE DISTRICT COURT REVERSIBLY ERRED BY ORDERING RESTITUTION.

*Facts*

The district court entered an Amended Judgment ordering Ms. Mercer-Erwin to pay over $144 million in restitution. ROA.43287-93. Count Seven of the indictment alleged conspiracy to commit wire fraud by engaging in a "Ponzi scheme." ROA.613-15. In essence, Ms. Mercer-Erwin was alleged to have agreed to defraud "investors" by "funnel[ing] money through refundable deposits placed on un-sellable aircraft during bogus sales transactions." ROA.594, 5289.

Government Exhibit 1A is a spreadsheet the Government referred to as the "Mercer-Machado ledger" throughout the trial, and it was the prosecution theory that this ledger documented the transactions comprising the charged "Ponzi scheme." ROA.2821, 6105, 6107, 6529, 6668-91. The ledger listed funds that were wired into and out of WBAT's trust account; the Government's stated theory was all of these transactions were illegal, as opposed to other "non-ledger" transactions that were legitimate.[17] ROA.6351-52.

The Government called a bank executive, Casey Sullivan, to testify he had been approached by Mr. Wayne Barr, who was the President of CCUR, and Mr.

---

[17]    Government Exhibit 25A shows the legitimate transactions, and Government Exhibit 25B shows the transactions alleged to be wire fraud. ROA.2820-21, 8517-30, 8531-77.

Machado to participate in a transaction he thought was unusual and illegal, involving money laundering. ROA.3623-82, 3693-736. He was so suspicious, he filed a Suspicious Activity Report and reported the incident to the FBI. ROA.3673. He specifically suspected Mr. Barr of money laundering. ROA.3727.

During Mr. Sullivan's testimony, the prosecutor sought to introduce out of court statements of Mr. Barr. ROA.3631. When the Defense objected, the prosecutor argued the statements were admissible under FED. R. EVID. 801(d)(2)(E).[18] ROA.3654. The district court overruled the objection and stated, "as the government just indicated, he is an unindicted co-conspirator." ROA.3655.

CCUR appears repeatedly on Government Exhibit 1, and also is listed in the restitution order. Similarly, and by the Government's logic at trial, many of the other entities listed in Government Exhibit 1A are co-conspirators. Ms. Mercer-Erwin was ordered to pay restitution to them, also. *Compare* ROA.6668-91 *with* ROA. 43292.[19]

---

[18]    She also specifically referred to Mr. Barr as an unindicted co-conspirator later in Mr. Sullivan's testimony. ROA. 3660.

[19]    Specifically, *see*: ROA.3046 (Moncler Motors); ROA.2824, 3046, 6685 (Chemtov/CMG Entities); ROA.3046, 6681, 8565 (Metrocity); ROA.6681 (Bayside Support Services); ROA.3193, 8546 (Horvitz/Rusty Entities); ROA.6682-83 (CCUR Holdings); ROA.6670 (WBIP LLC); ROA.6685 (America Core Aviation); ROA.6687, 6689 (Gothic Entities); ROA.6680 (Specialized Investment); ROA.6671, 8546 (Harris Entities); ROA.6671 (Powder Investments).

None of the recipients of the restitution testified either in person or by written submission at trial either on the merits or at sentencing.

## *Argument*

### A.     Standard of Review.

This Court reviews "the legality of a restitution order de novo and its amount for abuse of discretion." *United States v. Cockerell*, 140 F.4th 213, 224 (5th Cir. 2025) (citation omitted).

### B.     Restitution is Intended to Compensate "Victims" of Crime.

The controlling statute, the Mandatory Victims Restitution Act (MVRA), "mandates restitution for defendants convicted of an offense against property under this title, including any offense committed by fraud or deceit." *Id.* (quoting 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii)). "Victim" is defined as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

*Id.* (citing § 3663A(a)(2)).

**C.     The District Court Erred by Ordering Restitution to Co-Conspirators.**

**1.     One Cannot be a Co-Conspirator and a Victim at the Same Time.**

A co-conspirator cannot be a victim entitled to restitution under the MVRA; a Judge on the Second Circuit recently found this is because "courts have recognized the absurdity of that proposition." *United States v. Rainford*, 110 F.4th 455, 500-01 (2d Cir. 2024) (Sarah A. L. Merriam, Circuit Judge, concurring in part and dissenting in part); *see also In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1239 (11th Cir. 2014) (holding that "an entity that admits to engaging in illegal fraud cannot be a 'victim' of that fraud for purposes of the MVRA"); *United States v. Archer*, 671 F.3d 149, 171 (2d Cir. 2011) ("co-conspirators, who, by definition, know of the scheme, are not victims and may not receive restitution."); *United States v. Lazarenko*, 624 F.3d 1247, 1250-51 (9th Cir. 2010) (holding that "in the absence of exceptional circumstances, a co-conspirator cannot recover restitution for crimes in which he or she participates" because "Otherwise, the federal courts would be involved in redistributing funds among wholly guilty co-conspirators, where one or more co-conspirators may have cheated their comrades."); *United States v. Ojeikere*, 545 F.3d 220, 222-23 (2d Cir. 2008) (Victims who arguably had unclean hands were still entitled to restitution because they "were not involved in the offense of conviction, which was a fraudulent scheme to obtain money from them."); *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006) ("any order entered under the MVRA that

has the effect of treating coconspirators as 'victims,' and thereby requires 'restitutionary' payments to the perpetrators of the offense of conviction, contains an error so fundamental and so adversely reflecting on the public reputation of the judicial proceedings that we may, and do, deal with it sua sponte.").

The vast majority of restitution recipients in the instant case appear on the ledger the Government claimed documented the charged wire fraud. The district court even specifically stated one of them was an unindicted co-conspirator. ROA. 3655. Therefore, it was error to order restitution to those entities.

### 2.     No "Victim" Came Forward.

As mentioned, not one person or entity listed in the restitution order appeared at the sentencing hearing, submitted a written claim or document claiming to be a victim of Ms. Mercer-Erwin's offense of conviction, or in any way participated in the prosecution of this case. There was no evidence law enforcement interviewed any of them. ROA.2588-91. While this may not be dispositive of the issue whether they are "victims," there was no evidence the district court was able to use to determine whether all of the entities, like CCUR, were co-conspirators or truly innocent victims. The district court erred by ordering restitution.

### D.     Conclusion.

The district court erred by ordering restitution. This Court should set aside the order.

# CONCLUSION

The evidence on all counts of conviction was insufficient. Further, the district court erred in instructing the jury and by ordering restitution, to Ms. Mercer-Erwin's detriment. Ms. Mercer-Erwin respectfully asks this Court to find the evidence insufficient on Counts One, Two, Four, and Seven, set aside the convictions on those counts, and dismiss them with prejudice; in the alternative, Ms. Mercer-Erwin asks this Court to find the jury instructions were erroneous, and set aside the convictions on Counts One, Two, Four, and Seven. In the further alternative, she asks the Court to set aside the restitution order.

Respectfully submitted,


s/ Jack B. Zimmermann                     s/Terri R. Zimmermann
Jack B. Zimmermann                        Terri R. Zimmermann
Texas Bar No. 22266500                    Texas Bar No. 00797883
Jack@TexasDefenseLawyers.com              Terri@TexasDefenseLawyers.com
Zimmermann & Zimmermann, PLLC
P.O. Box 3699
Conroe, Texas 77305
(713) 552-0300

Counsel for Defendant-Appellant Debra Lynn Mercer-Erwin

# CERTIFICATE OF SERVICE

I certify that on July 28, 2025, the foregoing document was forwarded via U.S. Mail on today's date to Ms. Mercer-Erwin, and electronically filed with the Court's electronic filing system, which serves counsel for the Government.

<div style="margin-left: 50%;">

s/Terri R. Zimmermann
Terri R. Zimmermann
Texas Bar No. 00797883
Terri@TexasDefenseLawyers.com
Zimmermann & Zimmermann, PLLC
P.O. Box 3699
Conroe, Texas 77305
(713) 552-0300

</div>

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1: this document contains 9152 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft 365 in 14-point Times New Roman font.

s/Terri R. Zimmermann
Terri R. Zimmermann
Texas Bar No. 00797883
Terri@TexasDefenseLawyers.com
Zimmermann & Zimmermann, PLLC
P.O. Box 3699
Conroe, Texas 77305
(713) 552-0300